GROSS v. RIVKIN et al.

(Supreme Court, Appellate Term.  February 5, 1909.)

1. SALES (§ 52*)—ACTION FOR PRICE—EVIDENCE—SUFFICIENCY.
     Evidence in an action for the price of goods *held* insufficient to show
an agreement to sell and deliver as claimed by plaintiff.
     [Ed. Note.—For other cases, see Sales, Cent. Dig. § 136;  Dec. Dig.
§ 52.*]

2. SALES (§ 355*)—ACTIONS FOR PRICE—ISSUES AND PROOF.
     One suing for the price of goods sold and delivered was bound to prove
her cause of action as pleaded.
     [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1025;  Dec. Dig. §
355.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Anna Gross against Nathan F. Rivkin and others.  From a judgment for plaintiff, defendants appeal.  Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and SEABURY, JJ.

Samuel Silinsky, for appellants.
H. & J. J. Lesser, for respondent.

GIEGERICH, J.  The plaintiff herein is doing business under the firm name of Ignatius Gross, and sets up as her cause of action against the defendants in a verified complaint:

"That on or about the 8th day of June, 1908, plaintiff, at the special instance and request of the defendants, sold and delivered to the defendants goods, wares, and merchandise, consisting of 100 cases of conserva, of the agreed price and value, and for which the defendants promised and agreed to pay the sum of $400."

She then avers nonpayment, and makes the usual demand for judgment.  The defendants deny this averment.  It is undisputed that on the 9th day of November, 1907, the parties herein entered into a written agreement whereby the plaintiff agreed to sell to the defendants 360 cases of 100 pound cans of conserva, a kind of tomato paste, at 4 cents per pound, deliveries to be made as follows:  Sixty cases on November 20, 1907, 100 cases on December 10, 1907, and 100 cases on December 20, 1907; the defendants having the option in said agreement to call for the delivery of the last 200 cases at any time up to January 5, 1908.  Of this 360 cases, 260 were delivered and paid for, and this action relates to the remaining 100 cases.

By a very plausible and ingenuous brief, the plaintiff's attorneys attempt to sustain the judgment in her favor upon the ground that it appears that some time in March, 1908, it was agreed that the shipment of the remaining 100 cases should be delayed until June, 1908, at which time it is claimed such shipment was made.  An analysis of the testimony given, however, does not sustain this contention. The testimony of the general manager of the plaintiff is to the effect

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that in December, 1907, having previously made two deliveries upon the contract, he had a conversation with one of the defendants, in which he (defendant) asked to have the contract abrogated and to give him the balance of the goods in March. He says that he finally complied, so far as to ship some cases in January, 1908, and held the balance (the 100 cases in question) until March. He also testified that subsequently the said 100 cases were seen by him at the dock in Hartford, Conn., the defendants' place of business, and, upon informing the defendants over the telephone that the goods were at the dock, was told by them that they would not take them. Upon cross-examination this conversation, referred to as having been had in December, was fixed as being "about the first or second week in January, 1908." It was also shown by this witness that he was in Hartford on June 21, 1908, and he there learned that the defendants had brought an action against the plaintiff for breach of contract for failure to deliver these 100 cases, and that the witness then engaged an attorney to defend such action.

A brother of the plaintiff's manager was sworn, and testified that he was present at the conversation, before referred to, between the manager and one of the defendants. He at first fixes the time of the conversation in December, 1907, or the early part of January, 1908, but on cross-examination says it was "around the beginning of March." His version of the conversation is that the defendant said that if the plaintiff "should hold the goods off until about June, when he would take the 100 cases. I said that we would like to get the goods out before that; but he would not stand for it. He said around June we could ship the goods." Upon being pressed to fix the date of this conversation, he says: "I should think it was the first part of March."

This conversation was positively denied by the defendant with whom it is said to have been held. The defendants also offered in evidence certain letters passing between the parties. One written by the plaintiff under date of February 18, 1908, is as follows, minus address, etc.:

"We must ask you to send us check at once for the remaining 100 cases of conserva; otherwise, we shall be obliged to consider our obligation closed. Awaiting your prompt remittance, we remain."

In answer to this, under date of February 19, 1908, the defendants ask that the matter be held in abeyance until the return of one of their firm the following week, when he would take the matter up. Under date of February 20, 1908, the plaintiff, replying to the defendants' letter of the 19th, incloses a bill of lading for a shipment of January 27th, and says:

"We will give you until the first half of next week to send us check and instruction for remaining of 100 cases conserva."

On March 2, 1908, the plaintiff again wrote:

"We hereby formally cancel our obligation for the remaining 100 cases of conserva, on account of your not having taken within the time stipulated."

The next day, March 3, 1908, the defendants replied to this letter as follows:

"We have your letter of yesterday, and note what you say about canceling your obligation for the 100 cases conserva. Will say you are not right in

taking the stand, as your Mr. Gross said, when here last week, that he could not have the goods ready for us until some time next week under any circumstances, and we have agreed to·take them this week. We want 50 cases black and 50 cases red. Just as soon as you can advise us that the goods are ready for shipment, and send us sample representing the goods you will ship, we will send you our check."

This letter the plaintiff claims never to have received. Its proper addressing and mailing was shown, however, and under date of March 4, 1908, the plaintiff wrote:

"Yours of the 3d inst. to hand, and can only confirm our. decision given you in our last letter about conserva."

This letter clearly refers to the defendants' letter of March 3d, and leads to the inevitable conclusion that the defendants' letter of that date was received. One of the defendants testifies that; subsequent to the letter of March 3, 1908, he saw plaintiff's manager in Hartford, Conn., and that a suit for nondelivery of the goods was then begun by him, and is still pending. It is conceded that all of the goods were paid for by defendants, except the 100 cases involved in this suit, and it is quite probable, from all the facts and circumstances appearing in the record, that this action by the plaintiff is an attempt to forestall the defendants' action, first brought by them against the plaintiff, to obtain damages for nondelivery of the goods.

There is not a particle of proof in the record to sustain the plain-. tiff's allegation, contained in the complaint, of a sale and delivery of goods on June 8, 1908, and no attempt is made to prove such sale. The plaintiff's whole cause of action is predicated upon a contract made between the parties on November 9, 1907, which she formally and unequivocally terminated on March 3, 1908, by a refusal,· whether justifiable or not we express no opinion, to deliver the identical goods she sues for in this action and claims were delivered in June following-. ing. The plaintiff is bound to prove her cause of action as set up in the pleadings (Stone v. Stolts [Sup.] 112 N. Y. Supp. 1045), and the defendants' motion, made at the close of the plaintiff's case and renewed at the close of the entire case, pointed out this defect of proof. If we concede that the conversation between the plaintiff's manager and one of the defendants actually occurred, it appears, nevertheless, that subsequent to that conversation the plaintiff elected to terminate the contract, and by her letter of March 3d, confirmed by that of March 4th, refused to deliver the last 100 cases of conserva.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event. All concur.